UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-21-60-CBG |
| ) | |
| TYLER JAY MULLINS, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Now before the Court is Defendant Tyler Jay Mullins' Renewed Motion to Dismiss Indictment (Doc. No. 151), seeking to dismiss the Superseding Indictment (Doc. No. 45) pursuant to 28 U.S.C. § 1867(d) for substantial failure to comply with the provisions of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 (the "Jury Act"). *See also* Def.'s Suppl. (Doc. No. 152). The Government has submitted a Response (Doc. No. 162), and Defendant has submitted a Reply (Doc. No. 163). Having reviewed the parties' filings, the Court makes its determination.

*I.   Background*

On July 27, 2021, a federal grand jury returned a Superseding Indictment charging Defendant with: (1) Murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153; (2) Use, Carry, Brandish, and Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i),(ii) & (iii); and (3) Causing the Death and Murder of a Person in the Course of a Violation of Title 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924(j)(1). *See* Superseding Indictment at 1-2. The

Court later dismissed Count Two of the Superseding Indictment at the Government's request. *See* Order of June 27, 2022 (Doc. No. 148).

A jury trial commenced on Count One and Count Three of the Superseding Indictment on June 27, 2022. On the first day of trial, prior to jury selection, Defendant, through counsel, orally moved to dismiss the Superseding Indictment for substantial failure to comply with the provisions of the Jury Act. After hearing argument, the Court denied Defendant's motion. *See* June 27, 2022 Court Min. (Doc. No. 153). The jury trial proceeded, and on June 30, 2022, the jury returned a verdict of guilty as to both Counts One and Three. *See* Verdict (Doc. No. 161).

On July 3, 2022, Defendant filed the instant Motion to Dismiss Indictment, contending again that the 49 prospective jurors at his criminal trial did not represent a fair cross section of the community and were not randomly selected. *See* Def.'s Mot. at 1.

II.   *Applicable Standards*

The Jury Act provides in relevant part that "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to . . . petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The Jury Act is "the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of [the Act]." *Id.* § 1867(e). "A defendant must raise a Jury Act challenge 'before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence,

2

the grounds therefor, whichever is earlier.'" *United States v. Stein*, 985 F.3d 1254, 1262 (10th Cir. 2021) (quoting 28 U.S.C. § 1867(a)).  Strict compliance with this procedural requirement is essential.  *See id.*

Regarding remedies available to a defendant under the Jury Act, the Act states:

> If the court determines that there has been a substantial failure to comply with the provisions of [the Jury Act] in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate.  If the court determines that there has been a substantial failure to comply with the provisions of [the Jury Act] in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.

28 U.S.C. § 1867(d).

   III.   *Discussion*

        A.   <u>Timeliness</u>

The Government argues that the instant Motion is untimely under 28 U.S.C. § 1867(a) and so is barred.  *See* Gov't's Resp. at 1-3.  Defendant responds that the Motion was timely filed within seven days from the date Defendant and his counsel could have, in the exercise of due diligence, discovered the grounds for Defendant's challenge.  *See* Def.'s Mot. at 1-2; 28 U.S.C. § 1867(a).

The Court agrees with the Government.  "A defendant must raise a Jury Act challenge 'before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier*.'"  *Stein*, 985 F.3d at 1262 (emphasis added) (quoting 28 U.S.C. § 1867(a)).  Defendant's first Jury Act challenge may have been timely made, as Defendant's counsel raised his objection to the composition of the petit jury panel prior to voir dire and

immediately after he received the list of potential jurors. *See* Def.'s Reply at 2. Defendant's renewed Motion to Dismiss, made three days after his conviction, however, is untimely and procedurally barred. *See Stein*, 985 F.3d at 1263 ("A defendant's failure to file a challenge within seven days after being put on notice of the allegedly deficient jury selection procedures precludes a Jury Act claim.").[1]

## B.   Substantial Failure

Even if Defendant's Jury Act challenge was not procedurally barred, Defendant has not established that any failure to comply with the Jury Act was substantial. "The Jury Act provides remedies when a jury selection procedure 'involves a substantial failure to comply with the statute.'" *Stein*, 985 F.3d at 1263 (quoting *United States v. Kamahele*, 748 F.3d 984, 1022 (10th Cir. 2014)). "A failure is considered 'substantial' when it frustrates one of the three principles underlying the Act: (1) the random selection of jurors, (2) culling of the jury from a fair cross-section of the community, and (3) determination of disqualifications, exemptions, and exclusions based on objective criteria." *Id.* (internal quotation marks omitted).

Defendant argues that the 49 potential jurors in his case were not randomly selected and did not represent a fair cross section of the community. *See* Def.'s Mot. at 5-8; Def.'s

---

[1] Additionally, Defendant has not shown that the grant of the relief he seeks is authorized by the Jury Act. Defendant requests dismissal of the Superseding Indictment and for the Court to set aside the conviction and order a new trial. *See* Def.'s Mot. at 8. The relevant statute, however, provides that dismissal of the indictment is an option where there has been a substantial failure to comply with the Jury Act in selecting the grand jury. *See* 28 U.S.C. § 1867(d). If there is a substantial failure to comply with respect to the petit jury, as Defendant alleges here, the statute sets forth only one remedy: "[T]he court shall stay the proceedings pending the selection of a petit jury in conformity with [the Jury Act]." *Id.*

Reply at 2-5.  In his Reply, Defendant clarifies that he is not challenging the Eastern District of Oklahoma's Jury Plan itself.  *See* Def.'s Reply at 2.  Rather, Defendant argues that "EDOK's Jury Selection Plan was not followed because the forty-nine potential jurors [were] not randomly selected." *Id.* (emphasis omitted).  Defendant argues that this must be so because out of the 49 potential jurors, seven of those potential jurors were from the town of Ada in Pontotoc County, Oklahoma, the hometown of Defendant and the victim.  *See* Def.'s Mot. at 6.  Defendant contends that the probability of this occurring is ".29 of a single percentage point." *Id.*  Additionally, Defendant argues that the fact that 33 of the 49 potential jurors were women also shows that the panel was not randomly selected.  *See id.* at 7.  Finally, in further support of his argument that the 49 potential jurors were not randomly selected, Defendant contends that out of the 26 counties that comprise the Eastern District of Oklahoma, ten of those counties were not represented at all in the panel of 49 potential jurors.  *See id.* at 8.

The Eastern District of Oklahoma's Jury Plan sets forth a two-step process for the selection of potential jurors.  *See* Jury Plan (Doc. No. 162-1) at 1-2.  The Jury Plan was approved by the Judicial Council of the Tenth Circuit on March 3, 2020, and has been in effect since that time. *See id.* at 8.  Under the Jury Plan, first a Master Jury Wheel is created by selecting names at random from the most current registered voter lists.  *See id.* at 2-3.  Names are then randomly drawn from the master jury wheel to receive juror qualification questionnaires.  *See id.* at 3.  Those potential jurors who are qualified then go into a second wheel, the "Qualified Jury Wheel." *See id.* at 4. As prospective jurors are needed for grand or petit jury panels, the Clerk of Court draws names from the Qualified Jury Wheel at

random. *See id.* at 4. All selections are carried out through a programmed electronic data processing system to ensure the mathematical odds of any single name being picked are substantially equal. *See id.* at 2.

Defendant offers no evidence supporting that the plan detailed above was not followed. Defendant's observations concerning overrepresentation of potential jurors from Pontotoc County, the underrepresentation of potential jurors from other counties in the Eastern District, and the female majority on the panel do not demonstrate a deviation from the Jury Plan. As the Court explained when denying Defendant's first motion, the Eastern District's Jury Plan provides for random selection, and sometimes random selection results in clusters. In this instance, the Jury Plan resulted in a cluster of potential jurors from Pontotoc County and a slightly disproportionate number of female potential jurors.

Defendant also argues that his jury panel did not represent a fair cross section of the community because there were no identifiable Native Americans or African Americans on the jury panel. *See* Def.'s Mot. at 7. Defendant represents that the population of the Eastern District of Oklahoma is comprised of roughly 19% Native Americans, and so "if the jury panel reflected a fair cross section of the community, you would expect approximately nine (9) Native Americans in a group of forty-nine (49)." *Id*. Defendant also represents that there were no identifiable African Americans in the group of potential jurors. *Id*.

"The Sixth Amendment guarantees a defendant the right to a jury pool comprised of a fair cross-section of the community." *United States v. Green*, 435 F.3d 1265, 1270 (10th Cir. 2006). "A defendant does not have a right to a jury of 'any particular composition' and the jury actually chosen does not have to 'mirror the community.'" *Id.*

6

(quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)). "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

Native Americans and African Americans are both distinctive groups. *See United States v. Yazzie*, 660 F.2d 422, 426 (10th Cir. 1981); *United States v. Shinault*, 147 F.3d 1266, 1272 (10th Cir. 1998). Defendant, however, does not present statistics regarding the representation of Native Americans or African Americans in the venires from which juries are selected in the Eastern District. Instead, Defendant simply claims that neither he nor his family visually recognized any Native American or African American in the panel of 49 potential jurors for his case. *See* Def.'s Mot. at 7-8. Finally, other than Defendant's own visual observations about the 49 potential jurors, Defendant does not present any

7

evidence of a systematic exclusion of Native Americans or African Americans in the Eastern District's jury selection process.

For these reasons, Defendant has not established substantial failure to comply with the provisions of the Jury Act.

## CONCLUSION

Defendant's Renewed Motion to Dismiss Indictment (Doc. No. 151) is therefore DENIED.

IT IS SO ORDERED this 28th day of September, 2023.

_____
CHARLES B. GOODWIN
United States District Judge